08 CV 7103

Eric M. Lieberman (EL 4822)
David B. Goldstein (DG 8291)
Christopher J. Klatell (CK 3058)
Lindsey Frank (LF 6718)
RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Fl.
New York, NY  10006-1901
(212) 254-1111

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED AUG 1 1 2008 U.S.D.C. S.D.N.Y. CASHIERS

|  |  |
|---|---|
| THE ESTATE OF MARTÍN RAMÍREZ, | ) |
| by its duly appointed co-administrators and personal representatives, | ) |
| MARTÍN RAMÍREZ SALINAS and MARIA DE JESUS REYES RAMÍREZ MILLER, | ) |
| Plaintiffs, | ) |
| v. | ) |
| MAUREEN HAMMOND | ) |
| and | ) |
| SOTHEBY'S, INC., | ) |
| Defendants. | ) |

Case No. 08 Civ. 7103 (PKC)(CJCF)
ECF CASE

**COMPLAINT FOR REPLEVIN; CONVERSION; UNJUST
ENRICHMENT; IMPOSITION OF CONSTRUCTIVE TRUST; BREACH
OF FIDUCIARY DUTY; DECLARATION OF COPYRIGHT
OWNERSHIP; COPYRIGHT INFRINGEMENT and INJUNCTIVE
RELIEF**

1.    This is an action to recover 17 stolen and converted unpublished art works (the "17

Ramírez Works" or the "Works"), presently located in New York, that were created by decedent

1

Martín Ramírez González (hereinafter "Ramírez" or "Martín Ramírez"), a widely recognized artist who died intestate in California on February 17, 1963; for a declaratory judgment that the Estate of Martín Ramírez, by and through its duly appointed co-administrators, is the exclusive owner of the 17 Ramírez Works and all copyrights and related rights therein; for copyright infringement; for unjust enrichment, breach of fiduciary duty, and imposition of a constructive trust; and for an order enjoining defendants from displaying, reproducing, distributing, transferring or preparing derivative works of the 17 Ramírez Works without authorization or approval from plaintiffs. Plaintiffs also seek equitable relief (a) enjoining defendant Maureen Hammond, and all those acting in concert with her, including her counsel Rick Richmond and the law firm of Kirkland & Ellis LLP, from initiating, filing, maintaining, or litigating any lawsuit or action against plaintiffs, relating in any way to the disputes set out in this complaint, in any other jurisdiction, except as defense or counter-claim to this action; and (b) requiring defendant Sotheby's immediately either to deliver the 17 Ramírez Works into the possession of the Court, or, alternatively, to retain possession of the 17 Ramírez Works in New York until further order of the Court, as Sotheby's has offered to do.

## JURISDICTION and VENUE

2.      This action arises under the United Sates Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and the laws of the State of New York.

3.      This Court has exclusive subject matter jurisdiction of the copyright claims pursuant to 28 U.S.C. § 1338(a). It has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is properly laid in this district pursuant to 28 U.S.C. § 1400(a), in that defendant Hammond "may be found" in this district, within the meaning of the statute, and in that defendant Sotheby's resides in this district, and is an agent of defendant Hammond.

## PARTIES

5.      Martín Ramírez Salinas and Maria de Jesus Reyes Ramírez Miller (the "Personal Representatives") are the duly appointed co-administrators and personal representatives of Plaintiff the Estate of Martín Ramírez and are United States citizens and citizens and domiciliaries of California. They are grandchildren of the artist Martín Ramírez, a citizen of Mexico who resided in California from prior to 1931 until his death in a mental institution in 1963. On February 27, 2008, the Superior Court of California, County of Placer, issued letters of administration to the Personal Representatives appointing them as co-administrators of the Estate of Martín Ramírez (the "Estate"). A copy is annexed hereto as Exhibit A. The Personal Representatives bring this action in their capacity as the duly appointed co-administrators and personal representatives of the Estate.

6.      Defendant Maureen Hammond is an individual who is domiciled in the State of California. Upon information and belief, Hammond is a retired therapist with a Masters degree in psychology. This Court has personal jurisdiction over Hammond because she has transacted business in New York by bringing the Works into New York for sale at Sotheby's and has engaged in and threatens to engage in tortious acts and acts of copyright infringement within this district and State, including by the sale of the 17 Ramírez Works. Defendant Hammond transported the 17 Ramírez Works into New York City for sale and marketing by defendant Sotheby's because of the unique role New York City and Sotheby's play in the domestic and worldwide art market.

3

7.      Defendant Sotheby's, Inc. ("Sotheby's") is a Delaware corporation in the business of operating an auction house. Sotheby's regularly does business and is headquartered in New York, New York, and currently has physical possession and custody of the 17 Ramírez Works in New York.

## FACTS

8.      As more fully set forth below, the 17 Ramírez Works were taken from Ramírez's possession while he was incompetent and involuntarily committed to a mental hospital. A psychologist who had visited the hospital sent the Works to Hammond, purportedly for her use in an academic research project. The psychologist did not purport to own the Works or to transfer ownership of the Works to Hammond, nor could he have, given that the Works belonged to Ramírez, an incompetent patient. Hammond concealed her possession of the Works for over 40 years, until, motivated by the rapidly escalating value of Ramírez's work, she attempted to offer the Works for sale through Sotheby's in New York, even through she did not own them, had not paid for them, and, as a health care professional, knew that they properly belonged to an incapacitated patient and his heirs. Sotheby's contacted a member of the Ramírez family, and the Personal Representatives, via counsel, immediately demanded return of the Works. Hammond has refused to comply.

9.      Martín Ramírez was born in 1895 in Jalisco, Mexico. He was married in 1918 to Maria Santa Ana Navarro Velázquez (1900-1979), and had four children: Juana Ramírez Navarro (1919-2002); Teófila Ramírez Navarro (1921-1969); Augustina Ramírez Navarro (1923- ); and Candelario Ramírez Navarro (1926-1996).

10.     In 1925, Martín Ramírez migrated to California to seek employment. He found work as a laborer, and sent money back to his family in Mexico.

4

11. In 1931, police in California apprehended Martín Ramírez. On July 10, 1933, the Superior Court of the State of California, Sacramento County issued a "Judgment of Insanity and Order of Commitment of Insane Person," annexed hereto as Exhibit B, finding that "Martin Ramírez is insane, and is so far disordered in mind as to endanger life, health, person and property." Ramírez was involuntarily committed to the Stockton State Mental Hospital in Stockton, California, where he remained until 1948. In 1948, he was transferred to DeWitt State Hospital in Auburn, California, where he remained until his death on February 17, 1963.

12. At no time subsequent to 1933 was the judicial order of insanity modified or vacated. Ramírez's diagnosis was not modified. He received quarterly reviews indicating he could not be released from the hospital. His death certificate stated that he suffered from "Schizophrenic Reaction, Catatonic Type" for "32+ yrs."

13. During the entire time that Martín Ramírez was in the custody and control of Stockton and DeWitt State Hospitals, he was diagnosed as severely mentally ill (Schizophrenic Reaction, Catatonic Type), and was so impaired as to be unable to care for himself or his interests.

14. During the entire time that he was involuntarily committed to DeWitt, Ramírez was of unsound mind to the degree that he was entirely without understanding.

15. While he was in the custody and control of Stockton and DeWitt State Hospitals, Martín Ramírez created numerous works of art, including drawings, collages, and other works.

16. In the early 1950's, Ramírez's art work was displayed in several art shows at museums in California.

17. In recent years, Ramírez has come to be recognized as one of the great artists of the twentieth century. His works are now valued at sums often exceeding $200,000 per work.

18.     Dr. Tarmo Pasto was a psychologist, art historian and professor at Sacramento State College, near DeWitt State Hospital. He became familiar with Ramírez's work in the early 1950s and believed it relevant to his field of study. For a period of time Dr. Pasto joined the staff of DeWitt so that he more closely could pursue his study of Ramírez and other patients.

19.     Prior to 1961, Dr. Pasto, acting alone or in concert with others at DeWitt State Hospital, took physical possession of the 17 Ramírez Works.

20.     Pasto, who had participated in several museum exhibitions featuring Ramírez's work, knew prior to 1961 that Ramírez's artworks, and the copyrights therein, had value.

21.     Pasto regularly referred to Ramírez as his patient and described him as a regressed, incurable schizophrenic and incompetent.

22.     Pasto stood in a fiduciary relationship to Ramírez, his schizophrenic, involuntarily committed patient.

23.     Pasto exercised undue influence over Ramírez in any dealings in Ramírez's artworks that Pasto engaged in with his schizophrenic, involuntarily committed patient.

24.     Ramírez, an involuntarily committed adjudicated insane person and a diagnosed schizophrenic, could not consent to Dr. Pasto or others taking his art works, or to the transfer of any rights in the works, including the copyrights, by gift or otherwise.

25.     Pasto did not purport to own the 17 Ramírez Works or to have any title or ownership interest therein, and he did not acquire any title or ownership interest therein.

26.     To the extent Pasto did assert an ownership interest in the 17 Ramírez Works, he stole them from Ramírez.

27.     Pasto did not purchase the Works from Ramírez or state that he had received them as a gift.

6

28.     At all relevant times, California law established specific rules and procedures for the disposition of property of an involuntarily committed adjudicated insane person residing in a State hospital.

29.     The regulations in place at all relevant times prohibited gifts from patients to hospital personnel.

30.     Dr. Pasto, and anyone acting in concert with him, was prohibited from taking ownership or title to Ramírez's property, including the 17 Ramírez Works, except through public auction or as authorized by court order. No such court order ever was sought or issued, and no such transfer of title to the 17 Ramírez Works to Dr. Pasto, or anyone else, ever occurred.

31.     Ramírez did not intend to, and did not, transfer any copyright interest in the Works to Dr. Pasto or any other person.

32.     At all relevant times, Dr. Pasto knew that he did not have title or any ownership interest in the 17 Ramírez Works or in the copyrights therein.

33.     Dr. Pasto knew at all relevant times that Ramírez was incompetent and that all of Ramírez's property was held in guardianship or in trust for Ramírez's benefit.

34.     When Pasto took possession of the 17 Ramírez Works, he became a guardian de son tort, guardian de facto or constructive trustee over such property.

35.     To the extent Pasto was authorized to take possession of the 17 Ramírez Works by a guardian or trustee, including at the California Department of Institutions, Pasto's authority did not extend to assuming ownership over the 17 Ramírez Works or the copyrights therein or transferring or purporting to transfer ownership of the 17 Ramírez Works or the copyrights therein.

36.    Upon information and belief, in or about 1961 Hammond was a graduate student in psychology who was writing a thesis on art therapy and came into contact with Dr. Pasto because of his work in the field.

37.    In or about 1961, while Martín Ramírez was still alive, Dr. Pasto sent the 17 Ramírez Works to Hammond solely and explicitly for her use in connection with her studies.

38.    Dr. Pasto did not purport or claim to transfer title to the 17 Ramírez Works, or any other ownership interest, including in the copyrights, to Hammond, including by gift or otherwise.

39.    Dr. Pasto had no legal right or authority to transfer title to the 17 Ramírez Works, or ownership of the copyrights, to Hammond, if he in fact purported or attempted to do so.

40.    Hammond, as a mental health student and later professional, knew or, upon reasonable inquiry should have known, that Dr. Pasto had no legal right or authority to transfer title or ownership in the 17 Ramírez Works or the copyrights therein to Hammond, if he in fact purported or attempted to do so.

41.    Alternatively, upon information and belief, Hammond and Dr. Pasto conspired unlawfully to take the 17 Ramírez Works from Ramírez while he was incapacitated, and conspired to conceal their theft of the Works from Ramírez and the relevant authorities by leaving them in Hammond's possession.

42.    Hammond never contacted DeWitt, the Personal Representatives, Ramírez's wife, or any member of the Ramírez family about her possession of Ramírez's drawings, or even to inquire about their status, despite the fact that DeWitt's address was easily available to someone in Hammond's profession, and despite the fact that the Ramírez family's contact information was on file with DeWitt.

43.     In January 2007, the American Folk Art Museum ("AFAM") in New York City opened a show of 97 art works by Martín Ramírez.  Together with the show, AFAM produced a catalogue that published, for the first time, significant biographical and historical information about Ramírez.

44.     The AFAM show received wide, highly positive critical acclaim, including in *The New Yorker* and *The New York Times*, whose reviewer stated, "Ramírez . . . is simply one of the greatest artists of the twentieth century."

45.     The market value of Ramírez works was greatly enhanced by the AFAM show and its critical acclaim.

46.     Prior to the AFAM show, Hammond had concealed from the public and from the family and descendants of Martín Ramírez the existence of the 17 Ramírez Works she had received from Dr. Pasto.  Hammond continued to conceal the existence of, and her possession of, the 17 Ramírez Works until late 2007 or early 2008, when she privately disclosed to employees of AFAM in New York City that she had the 17 Ramírez Works.

47.     Prior to Ms. Hammond's communication to employees of AFAM, the 17 Ramírez Works were unknown to the world at large, including to the community of Ramírez scholars and collectors.

48.     Upon information and belief, Hammond consulted with employees of AFAM in New York City, and provided images of the 17 Ramírez Works to employees of AFAM, in order to authenticate the Works and to exploit employees of AFAM's expertise in connection with Hammond's plan to sell the 17 Ramírez Works in New York City for Hammond's sole and exclusive benefit.

9

49.    In May 2008, plaintiffs first became aware that an individual by the name of

Maureen Hammond was allegedly in possession of seventeen previously unknown works by

Martín Ramírez.  Upon locating Hammond's apparent residence in Arizona, on June 5, 2008, the

Estate, through counsel, sent a demand letter to defendant Hammond at an address in Bullhead

City, Arizona, on the border with California.  Upon information and belief, Hammond received

the letter.  The letter, annexed hereto as Exhibit C, stated, in pertinent part:

> It recently came to our attention that you claim to be, or to have been, in physical
> possession of certain artworks by Martín Ramírez (the "Works").
>
> The Works were taken unlawfully from Mr. Ramírez while he was a patient in a
> California hospital, and neither you nor anyone from whom you received the Works has,
> or could have acquired, lawful title thereto.  The Works, and any and all proceeds from
> the sale or exploitation thereof, instead belong to the Ramírez Estate.
>
> On behalf of our client, we demand that the Works immediately be returned to the Estate.
> We further demand that you immediately cease and desist from all efforts to sell, donate,
> or otherwise transfer or move the Works, and that you instruct any and all galleries,
> agents, warehouses, museums or other bailees with whom you have entrusted any such
> Works to cease and desist from such efforts.
>
> . . . You should provide us with an inventory of the Works and with an opportunity to
> inspect them.
>
> The Estate also owns the copyright and all related copyright rights in the Works.  You
> should therefore refrain from making, distributing, or publicly displaying any copies of
> the Works without the Estate's consent and should otherwise avoid taking any actions
> that violate applicable copyright law.

50.    Until sometime within the last few months, Hammond retained the 17 Ramírez

Works in her possession and control.

51.    Sometime before June 20, 2008, Hammond intentionally and voluntarily

delivered the 17 Ramírez Works to Sotheby's in New York City for the purpose of selling those

works through Sotheby's by public auction in New York.  It was an integral part of her plan to

market the 17 Ramírez Works in New York City, through Sotheby's, because of the unique and leading role New York City and Sotheby's play in the United States and worldwide art markets.

52. Upon information and belief, Hammond intentionally concealed from Sotheby's that she had received a demand letter from the Estate.

53. Upon information and belief, at the time Hammond delivered the Works to Sotheby's, Hammond knew about the Estate's ownership claims, including from third persons, and knew that the Estate was searching for her and the 17 Ramírez Works, but intentionally continued to conceal the 17 Ramírez Works, and her possession of them, including by making false statements, and/or having others make such statements on her behalf.

54. On June 20, 2008, defendant Sotheby's contacted a great-granddaughter of Martin Ramírez and told her that defendant Hammond had delivered the 17 Ramírez Works to Sotheby's in New York City for the purpose of selling those works through Sotheby's by public auction in New York.

55. Counsel for the Estate thereupon contacted Sotheby's in New York and informed it that the Estate believed it owned and had title to the 17 Ramírez Works and to the copyrights in these works. Sotheby's counsel subsequently informed plaintiffs' counsel in writing that Sotheby's would "retain possession of the Works until either a settlement is reached between our consignor and the Estate or a court of competent jurisdiction enters a final, non-appealable order determining who has title to the drawings." Exhibit D, annexed hereto.

56. Also on June 20, 2008, defendant Hammond personally telephoned one of plaintiffs' counsel in New York City. Hammond refused a request to return the Works to the Estate. Plaintiffs and defendant Hammond subsequently entered into a written stand-still agreement for 45 days, to permit possible resolution. Pursuant to the stand-still agreement,

plaintiffs agreed not to file a lawsuit immediately against defendant Hammond, who was

unrepresented at the time, and Hammond agreed not to file a lawsuit against the Estate, until the

expiration of the stand-still period. The stand-still agreement expired on August 9, 2008.

57.    Despite plaintiffs' repeated requests, Hammond has not provided plaintiffs or

their counsel with any documents showing that she has any title or ownership interest in the 17

Ramírez Works, and, upon information and belief, none exist.

58.    On July 24, 2008, in an attempt to preempt the Estate's claims and litigation in

New York, attorney Rick Richmond of the law firm of Kirkland & Ellis LLP contacted

plaintiffs' counsel by e-mail and fax, stating that he had been retained by Hammond and that he

intended to file a declaratory judgment action in California to establish "full title" to the 17

Ramírez Works and to the associated copyrights.

59.    The 17 Ramírez Works remain in the possession of defendant Sotheby's in New

York.

60.    Upon information and belief, Sotheby's and Hammond are parties to a

consignment agreement with respect to the Works.

61.    Upon information and belief, pursuant to a mandatory dispute resolution

provision in the consignment agreement, any disputes between Hammond and Sotheby's arising

out of Hammond's delivery of the 17 Ramírez Works must be litigated in state or federal court in

New York.

62.    On July 31, 2008, counsel for plaintiffs delivered a letter to defendant Sotheby's,

demanding that the 17 Ramírez Works in defendants' possession or control be returned to the

plaintiffs, and demanding that Sotheby's provide to plaintiffs' counsel copies of the digital

images of the 17 Ramírez Works. Exhibit E, annexed hereto.

63.    On July 28, 2008, plaintiffs' counsel sent, by e-mail and fax, a letter to Mr. Richmond demanding that digital or other images of the 17 Ramírez Works be delivered to the Estate's counsel.

64.    On August 4, 2008, defendant Sotheby's, with the agreement of defendant Hammond, transmitted images of the 17 Ramírez Works to plaintiffs' counsel.

65.    On August 5, 2008, plaintiffs' counsel formally reiterated the Estate's demand for return of the 17 Ramírez Works to Mr. Richmond.  Exhibit F, annexed hereto.

66.    The named defendants have refused to comply with the Estate's repeated demands, including as set forth in Exhibits C, E, and F, that the Works themselves be delivered to the Estate of Martín Ramírez.

67.    Prior to 2008, neither the Personal Representatives, nor any descendants of Martín Ramírez, knew or had reason to know that the 17 Ramírez Works existed, or that Hammond was in possession of them.

68.    Prior to 2008, neither the Personal Representatives, nor any descendants of Martín Ramírez, knew or had reason to know that Hammond claimed any ownership interests in the 17 Ramírez Works or any other artworks by Martín Ramírez.

69.    Prior to 2008, neither Dr. Pasto, anyone from or on behalf of DeWitt or the Department of Institutions, or any other person ever communicated to the wife or family of Martín Ramírez, the Personal Representatives or the Estate that the 17 Ramírez Works existed, that Dr. Pasto had taken them into his physical possession, or that the Works had been sent to Hammond.

70.    No diligent search would have revealed Hammond's possession of, or claims in, the 17 Ramírez Works.

71.    The 17 Ramírez Works have never been published or publicly displayed, and certainly not with the consent or authorization of Ramírez or any of his successors.

## FIRST CLAIM FOR RELIEF
## REPLEVIN – RIGHT TO POSSESSION

72.    Plaintiffs repeat and re-allege paragraphs 1-71.

73.    Martín Ramírez created the 17 Ramírez Works and owned them until his death in February, 1963.

74.    Dr. Pasto and officials at DeWitt acknowledged Ramírez was the owner of his artworks.

75.    Upon Martín Ramírez's death in California in 1963 without a will, ownership of the 17 Ramírez Works passed to his legal heirs.

76.    Letters of administration appointing the Personal Representatives as co-administrators of the Estate of Martín Ramírez were issued on February 25, 2008.  The Personal Representatives are authorized under law to collect and administer the Estate's property and to initiate suits on the Estate's behalf.

77.    As a staff member and consultant of DeWitt State Hospital, Dr. Tarmo Pasto had a fiduciary duty with respect to the artistic works and property of Martín Ramírez, a mental patient involuntarily committed to DeWitt State Hospital.

78.    As a matter of law, because of his condition, Martín Ramírez could not gift, sell, or otherwise transfer his property, including the 17 Ramírez Works, to Hammond, Dr. Pasto, or anyone else.

79.    Ownership of the 17 Ramírez Works was not transferred by public auction, was not transferred by court order, and was not transferred by any guardian or trustee acting on Ramírez's behalf.

80.    To the extent Dr. Pasto asserted an ownership interest over the Works, Dr. Pasto engaged in theft of the 17 Ramírez Works.

81.    Dr. Pasto never had good or valid legal title to the 17 Ramírez Works, and any claim he might have made to title was void, *ab initio*.

82.    Defendant Hammond could not and did not obtain good or valid title to the 17 Ramírez Works from Dr. Pasto, or otherwise.

83.    Defendant Hammond did not pay for the Works or provide any other consideration for the Works.

84.    Pasto did not represent to Hammond that he owned the Works and did not purport to transfer ownership of the Works to Hammond.

85.    Hammond has no right to continued possession of the 17 Ramírez Works.

86.    Defendant Hammond continues to possess and control the 17 Ramírez Works, without legal basis or right.

87.    Plaintiffs' rights to possess the 17 Ramírez Works on behalf of the Estate are superior to Hammond's.

88.    Plaintiffs' rights to possess the 17 Ramírez Works on behalf of the Estate are superior to Sotheby's, which only has a right to possess the Works, if at all, as the purported consignee of Hammond.

89.    Plaintiffs have made demand upon defendants for return or transfer of the 17 Ramírez Works to the Estate, as the rightful owner of such works.

90.    Defendants have failed and refused to return or to transfer the 17 Ramírez Works to plaintiffs.

91.    Plaintiffs have suffered damages in excess of $3,000,000.

92.    Plaintiffs are entitled to return of the 17 Ramírez Works.

## SECOND CLAIM FOR RELIEF
## CONVERSION

93.    Plaintiffs repeat and re-allege the contents of paragraphs 1-92.

94.    Plaintiffs have a complete right of ownership in and complete right to possess the 17 Ramírez Works, superior to any rights of defendants.

95.    Defendants have no title to, rights of ownership in, or rights to possess the 17 Ramírez Works.

96.    Defendants improperly have failed and refused to comply with plaintiffs' demands to return the 17 Ramírez Works.

97.    Defendants have thereby intentionally dealt in the 17 Ramírez Works in a manner inconsistent with the rights of the plaintiffs, have interfered with the plaintiffs' rights, and have acted to the exclusion of plaintiffs' rights in the 17 Ramírez Works.

98.    Defendant Hammond has converted the 17 Ramírez Works to her own use and benefit, to the detriment of plaintiffs' ownership and possessory rights.

99.    To the extent her possession was not initially wrongful, Defendant Hammond converted the 17 Ramírez Works when she first asserted an ownership interest over them in connection with her plan to sell the Works through Sotheby's.

100.    Plaintiffs have suffered damages in excess of $3,000,000.

## THIRD CLAIM FOR RELIEF
## UNJUST ENRICHMENT

101.    Plaintiffs re-allege paragraphs 1-100.

102.    Defendant Hammond has benefited and been enriched by her unlawful actions, as set forth above.

103.    Alternatively, Defendant Hammond has benefited and been enriched both by the unlawful actions of Dr. Pasto and her own unlawful actions, as set forth above.

104.    Martín Ramírez was the sole creator of the 17 Ramírez Works. Hammond had no role in the creation or production of the Works. She did not pay for the Works or provide any consideration to Ramírez or anyone else for the Works.

105.    Hammond has enriched herself by wrongfully retaining the Works and is now attempting to enrich herself further by selling the Works.

106.    Defendant Hammond's enrichment came at plaintiffs' expense and to plaintiffs' detriment.

107.    Plaintiffs have suffered resultant damages in excess of $3,000,000.00.

## FOURTH CLAIM FOR RELIEF
## DECLARATION AND IMPOSITION OF CONSTRUCTIVE TRUST

108.    Plaintiffs re-allege paragraphs 1-107.

109.    During all relevant time periods, Martín Ramírez was a ward of the Department of Institutions of the State of California and/or other applicable California public agencies. Any and all of Ramírez's property was held in trust for his benefit.

110.    By taking into their possession Ramírez's property, and purporting to administer it, Dr. Pasto and Hammond both became trustees or guardians de facto or de son tort with respect to such property. As such, they had fiduciary obligations to administer, use and possess such property only for the benefit of Ramírez and his successors.

111.    Hammond, as a mental health professional, who supposedly works for the benefit of the mentally ill, clearly knew or should have known that the 17 Ramírez Works were Ramírez's property and that she held them for his benefit.

112.    The Court should impose a constructive trust upon defendants to preserve and protect the 17 Ramírez Works, as well as over all proceeds defendants may have received or derived from such works.

## FIFTH CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY

113.    Plaintiffs re-allege paragraphs 1-112.

114.    Pasto stood in a fiduciary relationship to Ramírez, his patient.

115.    The staff and employees of DeWitt stood in a fiduciary relationship to Ramírez, who was involuntarily committed there.

116.    Hammond, to the extent she was working together with Pasto, also owed fiduciary duties to Ramírez.

117.    As a matter of law, anyone who intermeddles with property that is held in trust or by a guardian, or with the property of an Estate, assumes fiduciary duties and responsibilities with respect to such property.

118.    Hammond knew or should have known that the 17 Ramírez Works constituted trust or guardianship property, and knew or should have known that she owed fiduciary duties with respect to them.

119.    Hammond has never accounted to Ramírez, his family, his successors or the Estate for her handling, concealment and misuse of the 17 Ramírez Works.

120.    Hammond has breached her fiduciary duties to Ramírez and the Estate.

121.    Plaintiffs have suffered damages in excess of $3,000,000 and demand an accounting.

## SIXTH CLAIM FOR RELIEF
## DECLARATION of COPYRIGHT OWNERSHIP and INJUNCTIVE RELIEF

122.    Plaintiffs re-allege paragraphs 1-121.

123.    Martín Ramírez was the creator and author of the 17 Ramírez Works and became the owner of the copyrights therein at the time of creation.

124.    Ramírez was legally incompetent to transfer, sell, or donate the copyrights in the 17 Ramírez Works to any other person.

125.    Ramírez did not intend to transfer, sell, or donate the copyrights in the 17 Ramírez Works to any other person, including Dr. Pasto or Hammond, nor did he do so.

126.    Ramírez did not authorize or direct that the 17 Ramírez Works be published within the meaning of federal, state, or common law copyright law.

127.    The 17 Ramírez Works have not been published within the meaning of federal, state, or common law copyright law.

128.    The copyrights in the 17 Ramírez Works were never assigned or transferred to Dr. Pasto or to defendant Hammond.

129.    Upon the death of Martín Ramírez, the copyrights in the unpublished 17 Ramírez Works passed to his Estate.

130.    As a matter of law, the copyrights in the 17 Ramírez Works have been converted into federal statutory copyrights.

131.    The Estate is the owner of the copyrights in the 17 Ramírez Works, and holds the exclusive rights, *inter alia*, to display, reproduce, distribute, transfer, or prepare derivative works of the 17 Ramírez Works, including the originals of such works.

132.   Hammond has falsely alleged, including to third parties, that she is the owner of the copyrights in the 17 Ramírez Works, even though she is not the author of the Works and no one purported to assign any copyright rights to her, in a writing or otherwise, and even though Ramírez had no intention of transferring any copyright rights to her or to anyone else.

133.   Plaintiffs seek a declaration that the Estate is the owner of the copyrights in the 17 Ramírez Works under the Copyright Act.

134.   Plaintiffs are entitled to a declaratory judgment that the Estate is the lawful owner of the copyrights in the 17 Ramírez Works, and to permanent injunctive relief enjoining defendants from displaying, reproducing, distributing, transferring or preparing derivative works of the 17 Ramírez Works, or copies thereof, without authorization or approval from plaintiffs.

**SEVENTH CLAIM FOR RELIEF**
**COPYRIGHT INFRINGEMENT**

135.   Plaintiffs re-allege paragraphs 1-134.

136.   On August 4, 2008, the Estate applied for the copyright registration for the Work *Untitled No. 801 – Tunnel with Vertical Abstraction*. This application has been approved for registration by the Copyright Office, with claim ID 1-1DQLQW. The effective date of the registration is August 4, 2008.

137.   Plaintiffs registered *Untitled No. 801 – Tunnel with Vertical Abstraction* prior to, or within three months of, the Work's publication.

138.   Plaintiffs have filed applications for registration of other Works.

139.   Plaintiffs filed applications for copyright registration as soon as reasonably practicable. They could not have filed copyright applications earlier because Hammond had converted, misappropriated and concealed the existence of the 17 Ramírez Works so that neither

20

the Personal Representatives nor the public at large knew that the Works existed or what they looked like, or had images that could be registered.

140.    Defendant Hammond has willfully copied, reproduced, distributed and displayed copies of *Untitled No. 801 – Tunnel with Vertical Abstraction*, in its entirety and without the authorization of the copyright holder, including by photographing the Work and distributing it to Sotheby's and others in connection with her planned unlawful sale, with knowledge that the Estate owns the copyright, all in violation of the Copyright Act.

141.    Defendant Sotheby's copied, reproduced, distributed and displayed copies of *Untitled No. 801 – Tunnel with Vertical Abstraction*, in its entirety and without the authorization of the copyright holder, in violation of the Copyright Act.

142.    Defendant Hammond willfully has reproduced, distributed and displayed copies of other Works without the authorization or permission of the copyright holder, in violation of the Copyright Act.

143.    The Estate is entitled to damages, statutory damages, and attorneys' fees in connection with Hammond's infringement of the Estate's registered copyright in *Untitled No. 801 – Tunnel with Vertical Abstraction*, in an amount to be determined at trial.

### EIGHTH CLAIM FOR RELIEF
### DECLARATION of OWNERSHIP

144.    Plaintiffs re-allege paragraphs 1-143.

145.    As set forth above, the Estate of Martín Ramírez is the sole and true owner of all title and interest in the 17 Ramírez Works.

146.    Hammond holds no title in or to the 17 Ramírez Works, and any title that she purports to have acquired is void.

21

147.·  Plaintiffs accordingly seek a declaratory judgment that the Estate is the owner of the 17 Ramírez Works and that neither Maureen Hammond nor Sotheby's has any title or interest therein.

## NINTH CLAIM FOR RELIEF
## INJUNCTION AGAINST FILING LITIGATION IN OTHER JURISDICTIONS

148.  Plaintiffs repeat and re-allege paragraphs 1-147.

149.  Defendant Hammond voluntarily placed the 17 Ramírez Works with defendant Sotheby's in New York City for auction and sale in New York City.  It was an integral part of her plan to market the 17 Ramírez Works in New York City, through Sotheby's, because of the unique role New York City and Sotheby's play in the United States and worldwide art market.

150.  Hammond's attempt to sell the 17 Ramírez Works by an auction at Sotheby's in New York would be contrary to plaintiffs' ownership interests in the Works and would constitute the display, distribution, and transfer of the Works in violation of plaintiffs' exclusive copyrights in the 17 Ramírez Works.

151.  Upon information and belief, defendant Hammond executed a consignment agreement with defendant Sotheby's vesting exclusive jurisdiction over any disputes between defendants in the courts of New York.

152.  The 17 Ramírez Works remain in the immediate custody and control of defendant Sotheby's in New York.

153.  New York is the only forum where complete relief can be granted with respect to all parties.

154.  New York is the proper forum to hear this lawsuit because defendant Hammond deliberately took advantage of New York's unique role in the United States and worldwide art markets to sell the 17 Ramírez Works.

155.    New York City and State have a unique interest in deterring sales of stolen art, and in prohibiting allegedly stolen art from being removed from the jurisdiction.

156.    Plaintiffs voluntarily agreed to defer bringing an immediate lawsuit in New York upon learning that the 17 Ramírez Works had been placed with defendant Sotheby's in New York, because defendant Hammond was without counsel and had directly contacted plaintiffs' counsel and stated that, among other things, she would provide documents that she claimed established her title to the 17 Ramírez Works.

157.    Defendant Hammond's counsel, Mr. Richmond, has threatened to file a declaratory judgment action against plaintiffs in the courts of California, alleging that defendant Hammond has "full title" to the 17 Ramírez Works and to the copyrights in such works.  The purpose of this threat is solely to anticipate and preempt the current litigation and to harass the Estate by vexatious and duplicative litigation.

158.    Unless this Court enjoins defendant Hammond from bringing and maintaining her threatened lawsuit in California, plaintiffs will suffer irreparable harm by being deprived of their chosen forum, and by having to litigate in two forums at the same time, with attendant duplicate costs and possible conflicting orders and judgments.

159.    Unless this Court enjoins defendant Hammond from bringing and maintaining her threatened lawsuit in California, Hammond may attempt to compel a foreign court to order the removal of the Works from New York, thereby causing plaintiffs irreparable harm, and undermining the public interest of the State of New York in prohibiting the removal of allegedly stolen art works from the jurisdiction.

WHEREFORE, plaintiffs request that the Court issue a temporary restraining order, and a preliminary and final injunction:

1.    Enjoining defendant Hammond, and all those acting in concert with her, including her counsel Rick Richmond and the law firm of Kirkland & Ellis LLP, from initiating, filing, maintaining, or litigating any lawsuit or action against plaintiffs, relating in any way to the disputes set out in this complaint, in the State or Federal courts of California, or any other jurisdiction, except as defense or counter-claim to this action;

2.    Requiring defendant Sotheby's either immediately to deliver the 17 Ramírez Works into the custody of this Court, or to retain possession of the 17 Ramírez Works until further order of the Court, as Sotheby's has agreed to do;

3.    Providing such further relief as is just and proper; and

WHEREFORE, plaintiffs further request that the Court issue a final order, decree and judgment:

1.    Declaring the Estate of Martín Ramírez to be the owner of the 17 Ramírez Works;

2.    Ordering defendants to deliver the 17 Ramírez Works to plaintiffs;

3.    Granting custody and control of the 17 Ramírez Works to plaintiffs;

4.    Holding that the 17 Ramírez Works are and have been held in constructive trust for the benefit of the Estate until such time as the Works are actually delivered into the Estate's custody and control;

5.    Alternatively, awarding plaintiffs damages against defendant Hammond in excess of $3,000,000, in an amount to be determined at trial;

6.    Holding that defendant Hammond has been unjustly enriched and has

violated her fiduciary duties, and ordering an accounting and damages;

7.    Declaring that the plaintiffs are the exclusive owners of the copyrights in

the 17 Ramírez Works;

8.    Enjoining defendants from displaying, reproducing, distributing,

transferring or preparing derivative works of the 17 Ramírez Works,

without authorization or approval from plaintiffs;

9.    Holding that Defendant Hammond willfully infringed plaintiffs' registered

copyright and ordering damages, statutory damages, and attorneys' fees;

10.    Awarding plaintiffs the costs, expenses, and attorneys' fees of this action;

and

11.    Providing such other relief as is just and proper.


Dated: New York, New York
August 11, 2008

Eric M. Lieberman (EL 4822)
David B. Goldstein (DG 8291)
Christopher J. Klatell (CK 3058)
Lindsey Frank (LF 6718)
RABINOWITZ, BOUDIN, STANDARD,
KRINSKY & LIEBERMAN, P.C.
111 Broadway, 11th Floor
New York, NY 10006-1901
(212) 254-1111

*Attorneys for Plaintiffs*

**EXHIBIT A**

DE-150

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, state bar number, and address):    TELEPHONE AND FAX NOS.:

(650) 341-2585        (650) 341-1395

COLLEEN E. McAVOY, ESQ., SBN: 122219
McGLASHAN & SARRAIL, P.C.
177 BOVET ROAD, SIXTH FLOOR
SAN MATEO, CA 94402

ATTORNEY FOR (Name): Maria de Jesus Reyes Ramirez Miller, Martin Ramirez Salinas

FOR COURT USE ONLY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    PLACER

STREET ADDRESS:    11546B Avenue
MAILING ADDRESS:    Auburn, CA 95603
CITY AND ZIP CODE:
BRANCH NAME:

ESTATE OF (Name):    Martin Ramirez

DECEDENT

**F I L E D**
PLACER COUNTY
SUPERIOR COURT OF CALIFORNIA

**FEB 27 2008**

JOHN MENDES
EXECUTIVE OFFICER & CLERK

By K. Alford, Deputy

### LETTERS

| | |
|---|---|
| ☐ TESTAMENTARY | ☒ OF ADMINISTRATION |
| ☐ OF ADMINISTRATION WITH WILL ANNEXED | ☐ SPECIAL ADMINISTRATION |

CASE NUMBER:
S PR 5026

### LETTERS

1. ☐ The last will of the decedent named above having been proved, the court appoints (name):

   a. ☐ executor.

   b. ☐ administrator with will annexed.

2. ☒ The court appoints (name): Maria de Jesus Reyes Ramirez Miller and Martin Ramirez Salinas

   a. ☒ administrator of the decedent's estate.

   b. ☐ special administrator of decedent's estate

     (1) ☐ with the special powers specified in the Order for Probate.

     (2) ☐ with the powers of a general administrator.

     (3) ☐ letters will expire on (date):

3. ☒ The personal representative is authorized to administer the estate under the Independent Administration of Estates Act ☒ with full authority ☐ with limited authority (no authority, without court supervision, to (1) sell or exchange real property or (2) grant an option to purchase real property or (3) borrow money with the loan secured by an encumbrance upon real property).

4. ☐ The personal representative is not authorized to take possession of money or any other property without a specific court order.

WITNESS, clerk of the court, with seal of the court affixed.

(SEAL)

Date: 2-27-08

Clerk, by

**Karen Alford**

(DEPUTY)

### AFFIRMATION

1. ☐ PUBLIC ADMINISTRATOR: No affirmation required (Prob. Code, § 7621(c)).

2. ☒ INDIVIDUAL: I solemnly affirm that I will perform the duties of personal representative according to law.

3. ☐ INSTITUTIONAL FIDUCIARY (name):

   I solemnly affirm that the institution will perform the duties of personal representative according to law. I make this affirmation for myself as an individual and on behalf of the institution as an officer.
(Name and title):

4. Executed on (date): February 19, 2008
at (place): Alhambra/Bell Gardens , California.

*Martin Ramirez Salinas*
Martin Ramirez Salinas

*Maria R Miller*
(SIGNATURE)

Maria de Jesus Reyes Ramirez Miller

### CERTIFICATION

I certify that this document is a correct copy of the original on file in my office and the letters issued the personal representative appointed above have not been revoked, annulled, or set aside, and are still in full force and effect.

(SEAL) SUPERIOR COURT
EUREKA
COUNTY OF PLACER

Date: 2-27-08

Clerk, by

*K. Alford*

(DEPUTY)

Form Approved by the
Judicial Council of California
DE-150 [Rev. January 1, 1998]
Mandatory Use [1/1/2000]

**LETTERS**
(Probate)

Legal
Solutions
Plus

Probate Code, §§ 1001, 8403, 8405, 8544, 8545;
Code of Civil Procedure, § 2015.6

**EXHIBIT B**

# In the Superior Court of the State of California

## IN AND FOR THE COUNTY OF SACRAMENTO

## JUDGMENT OF INSANITY AND ORDER OF COMMITMENT OF INSANE PERSON

In the Matter of

Martin Ramirez

An Alleged Insane Person

On this ....10.... day of ....July....................., A. D. 19.33.. Martin Ramirez ..........................

........................................., a person alleged to be insane was brought before me in open Court, for a hearing and examination on a charge of insanity, on the affidavit of ..Leslie Cox................. charging h........ with insanity, made before, and on a warrant of *apprehension* arrest issued thereon by ....... Peter J. Shields .................................................................................., a magistrate of said County of Sacramento, and upon the order of this Court, fixing time and place for the hearing and examination of said charge, made in open Court, and it appearing to the Court that said alleged insane person, when said order was made, was then and there personally present in open Court, said alleged insane person, when said order was made, ........he was charged with being insane, and of h........ rights to make a defense to such charge, and of h........ right to be represented by counsel, and to produce witnesses on h........ behalf, and to have subpoenas issued to compel the attendance of witnesses, and was further informed that, if at such hearing and examination ........he should be ordered committed, that ........he might, within five days after the making of such order of commitment, demand that the question of h........ insanity be tried by a jury before said Superior Court.

And it further appearing to the Court, that the original order fixing time and place for said hearing and examination, was entered in the minutes of the Court by the clerk thereof, and a duly certified copy of said order was duly served on said alleged insane person, and upon............................................................

..................................................................., relatives of said alleged insane person, residing in said County of Sacramento, as were deemed by the Court necessary or proper persons to be served with notice of the arrest of said alleged insane person, and of the hearing on said charge of insanity.

At said hearing and examination, said alleged insane person was represented by ........................................

..................................................., an attorney of this Court (appointed by the Court for that purpose.)

The Court thereupon, in open Court, proceeded with the hearing and examination of said alleged insane person, and............................................................................................................

............................................................................................................................

were sworn and examined as witnesses in regard to the mental condition of said alleged insane person, h........ financial condition, and that of the persons liable for h........ care, support, and maintenance.

At said hearing and examination, there were in attendance, ........ Frank Brendel .......... and ....W.K. Lindsey .................., two regularly appointed and qualified Medical Examiners of said Sacramento County, who then and there heard the testimony of all the witnesses, and each of whom made a personal examination of said alleged insane person, and testified before the Court as to the results of such examinations, and other pertinent facts within their knowledge.

Said Medical Examiners, after making the examination and hearing the testimony of the witnesses, and testifying as aforesaid, did make a certificate showing all the facts required by Section 2170 of the Political Code, which certificate is hereto attached and made a part hereof.

Now, Therefore, after such examination and certificate made as aforesaid, the Court being satisfied from the testimony of said witnesses, and of the truth of the matters set forth in said certificate, that said Martin Ramirez ............................................................................... is insane, and is so far disordered in mind as to endanger health, person, and property, and that it is dangerous for life, health, person, and property, for such person to be at large, and that h........ condition is such as to require care and treatment in a hospital for the care and treatment of the insane.

It is therefore ordered, adjudged, and decreed, that said ...... Martin Ramirez ...................... is insane, and that ........he be committed to and confined in the ...... Stockton ...........................State Hospital at ...Stockton .............................., California.

It is further ordered and directed, that said ...... Donald Cox ........................, Sheriff of the County of Sacramento, State of California, take, convey, and deliver said ..Martin Ramirez ............ to the proper authorities of said hospital, to be held and confined therein as an insane person.

The sum of........................................................................................................dollars having been found on the person of said person at the time of h........ arrest, the said Sheriff is ordered to take possession of the same and deliver it to the Medical Superintendent of said institution with said insane person.

Done in open Court, this ......10.... day of ....July.................., 19..33..

Dal M. Lemmon

Judge of the Superior Court, County of Sacramento, State of California.

**EXHIBIT C**

**RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C.**
**ATTORNEYS AT LAW**
111 BROADWAY, ELEVENTH FLOOR
NEW YORK, NY  10006-1901

TELEPHONE (212) 254-1111

FACSIMILE (212) 674-4614

www.rbskl.com

VICTOR RABINOWITZ (1911-2007)
LEONARD B. BOUDIN (1912-1989)

MICHAEL KRINSKY
ERIC M. LIEBERMAN
DAVID B. GOLDSTEIN
CHRISTOPHER J. KLATELL

LINDSEY FRANK

COUNSEL

LEONARD I WEINGLASS
DEBRA EVENSON
TERRY GROSS
CRAIG KAPLAN

**VIA FEDERAL EXPRESS AND U.S. CERTIFIED MAIL**

Maureen M. Hammond
2168 Sierra Santiago
Bullhead City, AZ  86442-6755

June 5, 2008

Dear Ms. Hammond:

We write on behalf of our client, the Estate of Martín Ramírez (the "Estate").

It recently came to our attention that you claim to be, or to have been, in physical possession of certain artworks by Martín Ramírez (the "Works").

The Works were taken unlawfully from Mr. Ramírez while he was a patient in a California hospital, and neither you nor anyone from whom you received the Works has, or could have acquired, lawful title thereto.  The Works, and any and all proceeds from the sale or exploitation thereof, instead belong to the Ramírez Estate.

On behalf of our client, we demand that the Works immediately be returned to the Estate.  We further demand that you immediately cease and desist from all efforts to sell, donate, or otherwise transfer or move the Works, and that you instruct any and all galleries, agents, warehouses, museums or other bailees with whom you have entrusted any such Works to cease and desist from such efforts.

We demand a full accounting of any Works that have been sold, donated or transferred at any time by you, a family member, or anyone acting on your behalf. The accounting should include the name and address of each purchaser, donee, or transferee, and the date on which any such event occurred. All funds received by you or your agents in exchange for any Works should immediately be sequestered in a separate account for the benefit of the Estate. You should provide us with an inventory of the Works and with an opportunity to inspect them.

The Estate also owns the copyright and all related copyright rights in the Works. You should therefore refrain from making, distributing, or publically displaying any copies of the Works without the Estate's consent and should otherwise avoid taking any actions that violate applicable copyright law.

Please be aware that the Estate considers any Works in your possession to constitute stolen property, and that your continued custody or control of the Works, or your transfer of them, could subject you to civil and potential criminal liability.

We would like to meet with you and any representatives of yours to discuss this situation. We hope and believe that the matters addressed herein may be resolved short of litigation, as has been the case with respect to similarly situated artworks by Ramírez. Time, however, is of the essence, and the Estate is of course prepared to initiate litigation to protect its interests if necessary.

To the extent you wish to keep any discussions confidential, our client would be amenable.

The Estate reserves all rights and remedies.

Very truly yours,

Eric M. Lieberman
Christopher J. Klatell

**EXHIBIT D**

## Christopher Klatell

**From:** Olsoff, Jonathan [Jonathan.Olsoff@sothebys.com]
**Sent:** Monday, June 23, 2008 11:09 AM
**To:** Christopher Klatell
**Cc:** Druckman, Nancy
**Subject:** Ramirez Drawings

Dear Chris:

This letter is to confirm that in light of the claim of title that you have made on behalf of the Estate of Martin Ramirez (the "Estate") to the 17 works currently in our possession (the "Works"), we will retain possession of the Works until either a settlement is reached between our consignor and the Estate or a court of competent jurisdiction enters a final, non-appealable order determining who has title to the drawings.

As we discussed, I expect our consignor will need some time to retain counsel to advise her on this matter. I will be in London from Tuesday through the end of the week, but will be available by email if you need to reach me.

Sincerely,

Jonathan A. Olsoff
North American General Counsel
Senior Vice-President
Sotheby's, Inc.
1334 York Avenue
NY, NY 10021
(212) 606-7432

***********************************************************

This email and any files transmitted with it are confidential and

intended solely for the use of the individual or entity to whom they

are addressed. If you have received this email in error please notify

the postmaster at postmaster@sothebys.com.

www.sothebys.com

***********************************************************

**EXHIBIT E**

**RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C.**
**ATTORNEYS AT LAW**
111 BROADWAY, ELEVENTH FLOOR
NEW YORK, NY  10006-1901

———

TELEPHONE (212) 254-1111

FACSIMILE (212) 674-4614

www.rbskl.com

VICTOR RABINOWITZ (1911-2007)
LEONARD B. BOUDIN (1912-1989)

MICHAEL KRINSKY
ERIC M. LIEBERMAN
DAVID B. GOLDSTEIN
CHRISTOPHER J. KLATELL

———

LINDSEY FRANK

COUNSEL

LEONARD I WEINGLASS
DEBRA EVENSON
TERRY GROSS
CRAIG KAPLAN

Jonathan A. Olsoff, Esq.
North American General Counsel
Senior Vice-President
Sotheby's, Inc.
1334 York Avenue
New York, New York 10021

**Via Email and U.S. Mail**

July 29, 2008

> Re:  *Seventeen Works by Martín Ramírez in the Possession of Sotheby's*

Dear Mr. Olsoff:

As you know, we represent the Estate of Martín Ramírez.

On June 20, 2008 Nancy Druckman of Sotheby's informed a great-granddaughter of Martín Ramírez that a woman named Maureen Hammond was attempting to sell 17 previously unknown works by Ramírez (the "Works") through Sotheby's in New York. On behalf of the Estate, we immediately informed Sotheby's of the Estate's position that neither title to the Works, nor the copyrights therein, had been lawfully transferred from Ramírez, and that the Estate was therefore the owner of the Works and the copyrights.

In 1933 the State of California adjudicated Ramírez to be "insane" and involuntarily committed him to a mental institution. He remained committed to mental hospitals for the remainder of his life. As a matter of law, he lacked capacity to transfer title to his property, including the Works. Nor has our investigation revealed any purported transfer of title in the Works by a trustee or anyone else authorized to act on Ramírez's behalf.

Ms. Hammond purports to have received the Works from a doctor, Dr. Tarmo Pasto, who visited the hospital in which Ramírez was committed. Despite our repeated

requests since June 23, 2008, Ms. Hammond and her various counsel have not provided any explanation as to how Dr. Pasto acquired a legitimate ownership interest in the Works that he could have transferred to Ms. Hammond. Ms. Hammond and her counsel also repeatedly have refused to provide any documentation regarding her ownership claims, including a purported 1961 letter from Pasto to Hammond that supposedly accompanied the Works. It is difficult to imagine why Ms. Hammond and her counsel would refuse to provide documentation if she had any legitimate claims to ownership.

We understand that Sotheby's position is that it "will retain possession of the Works until either a settlement is reached between our consignor and the Estate or a court of competent jurisdiction enters a final, non-appealable order determining who has title to the drawings." Given Ramírez's incapacity, however, and Ms. Hammond's refusal (or inability) to provide any explanation as to her interest in the Works, we respectfully demand that Sotheby's immediately deliver possession of the Works to the Estate. Under no condition should Sotheby's otherwise transfer the Works or take any action contrary to the Estate's interest therein.

Earlier this week you informed us by telephone that Sotheby's was also in possession of images of the Works, but that you could not provide us with copies without the consent of your purported consignor. Because the Estate is unquestionably the owner of the copyrights in the Works, we respectfully demand that you immediately provide us with the images and cease and desist from any other reproduction, distribution, or display of same without the Estate's express approval.

Please let us know if you have any questions. We would be happy to consider providing any documentation that Sotheby's deems necessary to secure the release of the Works.

If Sotheby's is unable, or unwilling, to comply with this letter we will be forced to have recourse to the courts to protect our client's rights. We will therefore need to know if Sotheby's agrees to release the Works to the Estate before the conclusion of the meeting currently scheduled for August 8, 2008. If the answer is no, and unless there is an intervening agreement to the contrary, we will proceed immediately thereafter.

The Estate of Martín Ramírez reserves all rights.

Best regards,

Eric M. Lieberman
Christopher J. Klatell

2

**EXHIBIT F**

**RABINOWITZ, BOUDIN, STANDARD, KRINSKY & LIEBERMAN, P.C.**
**ATTORNEYS AT LAW**
111 BROADWAY, ELEVENTH FLOOR
NEW YORK, NY  10006-1901
TELEPHONE  212 254 1111
FAX  212 674 4614

ERIC M. LIEBERMAN
(212) 254 1111 Ext. 101
elieberman@rbskl.com

LEONARD B. BOUDIN (1912-1989)
VICTOR RABINOWITZ (1911-2007)

MICHAEL KRINSKY
ERIC M. LIEBERMAN
DAVID B. GOLDSTEIN
CHRISTOPHER J. KLATELL
————
LINDSEY FRANK

COUNSEL

LEONARD I. WEINGLASS
DEBRA EVENSON
TERRY GROSS
CRAIG KAPLAN
THOMAS R. ASHER

August 5, 2008

**VIA EMAIL AND FACSIMILE**

Rick Richmond, Esq.
Brent Caslin, Esq.
Kirkland & Ellis LLP
777 South Figueroa Street
Los Angeles, CA  90017
Fax:    (213) 680-8500

     Re:    *Estate of Martín Ramírez v. Hammond*

Dear Mr. Richmond:

     As you know, we represent the Estate of Martín Ramírez.  We write with respect to seventeen artworks by Mr. Ramírez that your client, Maureen Hammond, delivered into the physical possession of Sotheby's in New York (the "Works").

     In 1933 the State of California adjudicated Ramírez to be "insane" and involuntarily committed him to a mental institution.  A copy of the judgment is attached as Exhibit A.  He was never restored to capacity and remained committed to mental hospitals for the rest of his life.  A copy of his death certificate is attached as Exhibit B.  As a matter of law, he lacked capacity to transfer title to, or waive any rights in, his property, including the Works.  Accordingly, his Estate is the Works' rightful owner.

     As described in our letter dated July 8, 2008, we repeatedly have explained the foregoing to your client, Maureen Hammond, and her counsel.  We sent Mrs. Hammond a letter demanding return of the Works on June 5, 2008, weeks before we learned that the

Works had been delivered to Sotheby's in New York. We subsequently repeated our demand that Mrs. Hammond return the Works to the Estate on several occasions, including by telephone on June 23, 2008. Mrs. Hammond nonetheless has refused to return the Works, acknowledge the Estate's title, or provide any explanation as to the rightfulness of her possession.

We look forward to discussing this matter with you on Friday, August 8, 2008. The standstill agreement between the parties extends through and including that day. Unless the parties agree to extend the standstill period, the Estate will sue Mrs. Hammond and Sotheby's immediately after the end of the standstill period for conversion, among other things. The lawsuit will be brought in New York. Mrs. Hammond brought the Works here and Sotheby's intends to hold them here until a final judgment has been entered or the parties resolve their differences. Upon information and belief, Mrs. Hammond also agreed to a mandatory New York forum selection clause with Sotheby's.

You have threatened to bring a purely anticipatory declaratory judgment action in California in response to the Estate's demands and threats of litigation. Such a lawsuit will not shift venue from New York, where the Works are located, and we urge you not to waste the parties' time by bringing such needless and harassing litigation. As for your proposed tort actions, you know perfectly well that they are frivolous and harassing. They also are completely belied by Mrs. Hammond's conduct, including her refusal to provide any information or documentation about her claims to ownership. The Estate reserves all rights with respect to the purported tort claims, including without limitation under applicable anti-SLAAP laws.

As mentioned above, Sotheby's has taken the position that it will retain possession of the Works in New York "until either a settlement is reached" or "a court of competent jurisdiction enters a final, non-appealable order determining who has title" to them. Please let us know immediately if you consent to Sotheby's proposed retention of the Works. Otherwise, we will seek appropriate judicial relief after the expiration of the standstill period.

We look forward to meeting with you this Friday to discuss this matter. Now that you have had time to review the facts and the law, we hope that you will be in a position to address the Estate's ownership of the Works in a productive manner.

The Estate of Martín Ramírez reserves all rights and remedies.

Sincerely,

Eric M. Lieberman

**EXHIBIT A**

# In the Superior Court of the State of California

### IN AND FOR THE COUNTY OF SACRAMENTO

## JUDGMENT OF INSANITY AND ORDER OF COMMITMENT OF INSANE PERSON

In the Matter of

Martin Ramirez
An Alleged Insane Person

On this 10 day of July A. D. 19 33 Martin Ramirez , a person alleged to be insane was brought before me in open Court, for a hearing and examination on a charge of insanity, on the affidavit of Leslie Cox charging h with insanity, made before, and on a warrant of arrest issued thereon by apprehension Peter J. Shields , a magistrate of said County of Sacramento, and upon the order of this Court, fixing time and place for the hearing and examination of said charge, made in open Court, and it appearing to the Court that said alleged insane person, who said order was made, was then and there personally present in open Court, said alleged insane person, when said order was made, he was charged with being insane, and of h rights to make a defense to such charge, and of h right to be represented by counsel, and to produce witnesses on h behalf, and to have subpoenas issued to compel the attendance of witnesses, and was further informed that, if at such hearing and examination he should be ordered committed, that he might, within five days after the making of such order of commitment, demand that the question of h insanity be tried by a jury before said Superior Court.

And it further appearing to the Court, that the original order fixing time and place for said hearing and examination, was entered in the minutes of the Court by the clerk thereof, and a duly certified copy of said order was duly served on said alleged insane person, and upon

, relatives of said alleged insane person, residing in said County of Sacramento, as were deemed by the Court necessary or proper persons to be served with notice of the arrest of said alleged insane person, and of the hearing on said charge of insanity.

At said hearing and examination, said alleged insane person was represented by

, an attorney of this Court (appointed by the Court for that purpose.)

The Court thereupon, in open Court, proceeded with the hearing and examination of said alleged insane person, and

were sworn and examined as witnesses in regard to the mental condition of said alleged insane person, h financial condition, and that of the persons liable for h care, support, and maintenance.

At said hearing and examination, there were in attendance, Frank Brendel and W.K. Lindsay , two regularly appointed and qualified Medical Examiners of said Sacramento County, who then and there heard the testimony of all the witnesses, and each of whom made a personal examination of said alleged insane person, and testified before the Court as to the results of such examinations, and other pertinent facts within their knowledge.

Said Medical Examiners, after making the examination and hearing the testimony of the witnesses, and testifying as aforesaid, did make a certificate showing all the facts required by Section 2170 of the Political Code, which certificate is hereto attached and made a part hereof.

Now, Therefore, after such examination and certificate made as aforesaid, the Court being satisfied from the testimony of said witnesses, and of the truth of the matters set forth in said certificate, that said Martin Ramirez is insane, and is so far disordered in mind as to endanger health, person, and property, and that it is dangerous for life, health, person, and property, for such person to be at-large, and that h condition is such as to require care and treatment in a hospital for the care and treatment of the insane.

It is therefore ordered, adjudged, and decreed, that said Martin Ramirez is insane, and that he be committed to and confined in the Stockton State Hospital at Stockton , California.

It is further ordered and directed, that Donald Cox , Sheriff of the County of Sacramento, State of California, take, convey, and deliver said Martin Ramirez to the proper authorities of said hospital, to be held and confined therein as an insane person.

The sum of dollars having been found on the person of said person at the time of h arrest, the said Sheriff is ordered to take possession of the same and deliver it to the Medical Superintendent of said institution with said insane person.

Done in open Court, this 10 day of July , 19 33

Dal M. Lemmon
Judge of the Superior Court, County of Sacramento,
State of California.

**EXHIBIT B**

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

### OFFICE OF THE CLERK-RECORDER
# COUNTY OF PLACER
#### AUBURN, CALIFORNIA

**CERTIFICATE OF DEATH**
STATE OF CALIFORNIA—DEPARTMENT OF PUBLIC HEALTH

LOCAL REGISTRATION DISTRICT AND CERTIFICATE NUMBER 3100 — 159

**DECEDENT PERSONAL DATA**

| 1. NAME OF DECEASED—FIRST NAME | MIDDLE NAME | 1c. LAST NAME | 2. DATE OF DEATH |
|---|---|---|---|
| Martin | unavailable | Ramirez | February 17, 1963  6:00 A. |

| 3. SEX | 4. COLOR OR RACE | 5. BIRTHPLACE | 6. DATE OF BIRTH | 7. AGE | 8. SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|
| male | white | Mexico | 1-31-1895 | 67 | unavailable |

9. NAME AND BIRTHPLACE OF FATHER: Gertrudiz Ramirez—Mexico
10. MAIDEN NAME AND BIRTHPLACE OF MOTHER: Juana Gonzales—Mexico
11. STATE OF BIRTH COUNTRY: Mexico

12. LAST OCCUPATION: laborer
13. unavail
14. NAME OF LAST EMPLOYING COMPANY OR FIRM: Unavailable
15. KIND OF INDUSTRY OR BUSINESS: unavailable

16. NAME OF PRESENT SPOUSE: none
17. married
18. Ana Maria Navarro de
19. PRESENT OR LAST OCCUPATION OF SPOUSE: housewife

**PLACE OF DEATH**

| 18a. PLACE OF DEATH—NAME OF HOSPITAL | 18b. STREET ADDRESS |
|---|---|
| DeWitt State Hospital | P.O. Box 192 |

| 18c. CITY OR TOWN | 18d. COUNTY | 19. LENGTH OF STAY IN CALIFORNIA |
|---|---|---|
| Auburn | Placer | 37+ |

**LAST USUAL RESIDENCE**

| 20a. LAST USUAL RESIDENCE—STREET ADDRESS | 20b. | 20c. CITY OR TOWN | 20d. COUNTY | 20e. STATE |
|---|---|---|---|---|
| transient | | Sacramento | Sacramento | California |

21. INFORMANT: Medical Records, DeWitt State Hospital, P.O. Box 192, Auburn, Calif.

**PHYSICIAN'S OR CORONER'S CERTIFICATION**

22a. PHYSICIAN
22c. CORONER: autopsy
23. Auburn, California, A. SCOTT, CORONER
22d. DATE SIGNED: 2-28-63

**FUNERAL DIRECTOR AND LOCAL REGISTRAR**

| 23. DATE: burial | 24. NAME OF CEMETERY OR CREMATORY: Mt. Calvary Cemetery | 25. EMBALMER'S SIGNATURE: Not Done |
|---|---|---|

26. NAME OF FUNERAL DIRECTION: Auburn Funeral Home
27. 2-28-63
by GERALDINE FAIR, H. D. Deputy

**CAUSE OF DEATH**

30. CAUSE OF DEATH
PART I. DEATH WAS CAUSED BY:
IMMEDIATE CAUSE (a): Acute Pulmonary Edema
DUE TO (b): Myocardial Infarct, old
DUE TO (c): Coronary Arteriosclerosis, Severe, with Occlusion

APPROXIMATE INTERVAL BETWEEN ONSET AND DEATH: days / years / years

PART II. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RELATED TO THE TERMINAL DISEASE CONDITION GIVEN IN PART I (a):
1. Diabetes Mellitus — years. 2. Schizophrenic Reaction, Catatonic Type – 32+ yrs.

**OPERATION AND AUTOPSY**

31. OPERATION
32. DATE OF OPERATION
33. AUTOPSY

**INJURY INFORMATION**

34a. SPECIFY ACCIDENT, SUICIDE OR HOMICIDE
34c. DESCRIBE HOW INJURY OCCURRED
35a. TIME OF INJURY
35b. INJURY OCCURRED
35c. PLACE OF INJURY
35e. CITY, TOWN OR LOCATION



**CERTIFIED COPY OF VITAL RECORDS**
STATE OF CALIFORNIA, COUNTY OF PLACER

*000068839*

This is a true and exact reproduction of the document officially registered and placed on file in the office of the Placer County Clerk-Recorder.

DATE ISSUED  01/29/2008

This copy is not valid unless prepared on an engraved border displaying the date, seal and signature of the Clerk-Recorder.





JIM McCAULEY
PLACER COUNTY CLERK-RECORDER